# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHERINE ANTONINI, | : |
| Plaintiff, | : |
| v. | : 3:16-CV-2021 |
| | : (JUDGE MARIANI) |
| FORD MOTOR COMPANY, | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

The above captioned matter is a product liability suit arising out of a motor vehicle accident in which Plaintiff, Katherine Antonini, was injured because of an alleged design flaw or flaws in her 2005 Ford Explorer. (Doc. 14). Defendant, Ford Motor Company, has moved to dismiss, arguing that this Court lacks personal jurisdiction over Defendant. (Doc. 10). For the reasons that follow the Court will deny Defendant's Motion.

### II. PROCEDURAL BACKGROUND AND FACTUAL ALLEGATIONS

Plaintiff, a resident of Milford, Pennsylvania, was the owner of a 2005 Ford Explorer. (Doc. 14 at ¶ 1, 68). This particular Ford Explorer was assembled in Louisville, Kentucky, and sold by Defendant to an independent Ford dealership in Monroe, New York. (Doc. 10-2 at ¶ 5). In 2005, the dealership sold the car to an owner in New York. (Doc. 10-3). Then, in 2012, the owner appears to have sold the car to the Healey Brothers Automotive Group in

New York. (*Id*.). Thereafter, Plaintiff purchased the vehicle and brought it to Pennsylvania. (*Id*.).

On March 18, 2016, Plaintiff was driving her 2005 Ford Explorer in Pike County, Pennsylvania, when it was involved in an accident. (Doc. 14 at ¶¶ 68, 73). Plaintiff, who was wearing her seatbelt, claims that she sustained serious injuries as a result of the crash because the vehicle, which was designed, manufactured, and marketed by Defendant, was not reasonably crashworthy. (*Id*. at ¶¶ 69-71, 74-75, 95). On October 4, 2016, Plaintiff filed her single count complaint in this Court. (Doc. 1). Defendant then filed its Motion to Dismiss, arguing that the vehicle at issue was not manufactured or sold in Pennsylvania and was not brought into Pennsylvania through any action of Defendant. (Doc. 10). Thereafter, Plaintiff filed an Amended Complaint, (Doc. 14), along with its Brief in Opposition to Defendant's Motion, (Doc. 13).[1] The issue is now ripe for decision.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12, a defendant may move to dismiss a complaint for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie

---

[1] Although the filing of an amended complaint after a motion to dismiss will oftentimes render the motion moot, Defendant has not requested an opportunity to refile its Motion in light of the Amended Complaint. Further, Defendant was afforded an opportunity to respond to Plaintiff's new allegations in Defendant's Reply Brief. (Doc. 15).

2

case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003) ("It is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff."). "Of course, by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

## IV. ANALYSIS

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). "Due process requires that the defendant be given adequate notice of the suit and be subject to the personal jurisdiction of the court." *Id.* (internal citations omitted). In the context of federal courts, it is the Fifth Amendment that imposes restrictions on the exercise of personal jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1783-84, 198 L. Ed. 2d 395 (2017). However, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014) (citing FED. R. CIV. P. 4(k)(1)(A)). In

3

Pennsylvania, the state's long-arm statute provides that personal jurisdiction extends "to the fullest extent allowed under the Constitution of the United States." 42 Pa. C.S.A. 5322(b). Accordingly, this Court may exercise personal jurisdiction over a defendant if doing so does not violate the Due Process Clause. *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998).

There are two types of personal jurisdiction: "general jurisdiction and specific jurisdiction." *O'Connor*, 496 F.3d at 317. "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. "But 'only a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that State." *Id.* (quoting *Daimler AG*, 134 S. Ct. at 760). "Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Id.* (alteration in original) (quoting *Daimler AG*, 134 S. Ct. at 754). Here, the only arguments that Plaintiff has raised concern whether this Court has specific personal jurisdiction.[2]

---

[2] Plaintiff's only clear assertion that she believes that this Court has general personal jurisdiction over Defendant is found in a single sentence in her sur reply, (Doc. 16 at 3), which Plaintiff improperly filed without leave of the Court. *See* Local Rule 7.7. To the extent that Plaintiff has not waived this argument by her failure to properly brief it, *see John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997), the Court is satisfied that Defendant's activity in Pennsylvania does not give rise to general jurisdiction. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general

4

The Third Circuit has articulated a three-part test to determine whether a district court can exercise specific personal jurisdiction over a defendant. *See O'Connor*, 496 F.3d at 317. "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id.* (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). "And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with "fair play and substantial justice."'" *Id.* (alteration in original)

---

jurisdiction." *Daimler AG*, 134 S. Ct. at 760 (internal quotations marks and alterations omitted). "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558, 198 L. Ed. 2d 36 (2017) (quoting *Daimler AG*, 134 S. Ct. at 761 n.19).
    Here, Defendant is incorporated in Delaware and has its principal place of business in Michigan. (Doc. 14 at ¶ 2). Although, according to Plaintiff's Amended Complaint, Defendant conducts significant business in Pennsylvania, its in-state activities do not render it at home in Pennsylvania under the Supreme Court's precedent. For example, in *Daimler AG*, the Supreme Court considered whether Daimler was at home in California when attributing the in-state contacts of its subsidiary, Mercedes-Benz USA, LLC, to Daimler. *Daimler AG*, 134 S. Ct. at 762. Noting that Mercedes-Benz USA, was "the largest supplier of luxury vehicles to the California market," and that its "California sales account for 2.4% of Daimler's worldwide sales," the Court found Daimler was not at home in California. *Id.* at 752, 762. The Court reasoned that "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n.20. Similarly, in *BNSF Railway*, the Supreme Court found that BNSF Railway was not at home in Montana despite the fact that it had "over 2,000 miles of railroad track and more than 2,000 employees" in the state. *BNSF Ry. Co.*, 137 S. Ct. at 1559. In contrast, in *Perkins v. Benguet Consolidated Mining Company*, the Supreme Court found a corporation was at home in Ohio when its president, due to war, temporarily relocated there from the Philippines and ran the business from Ohio. 342 U.S. 437, 447-49, 72 S. Ct. 413, 96 L. Ed. 485 (1952). Turning to the case at hand, according to Plaintiff's Amended Complaint, Defendant maintains offices and employees in Pennsylvania, is registered to do business in Pennsylvania, markets and derives money from the sale of its products in Pennsylvania, and conducts numerous other related activities in the state. (Doc. 14 at ¶¶ 5, 7, 12, 14, 22-27, 39-42, 46). These contacts more closely resemble those found insufficient to establish general jurisdiction in *Daimler AG* and *BNSF Railway*, and do not make this an "exceptional case" such as *Perkins*.

5

(quoting *Burger King*, 471 U.S. at 476).³ The first two steps address "whether a defendant has the requisite minimum contacts with the forum," *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009), and the third step concerns whether exercising jurisdiction is reasonable under the circumstances.

As applied to Defendant, the first prong of this test is easily met. Plaintiff's Amended Complaint outlines a variety of ways in which Defendant purposefully directed its activities at Pennsylvania. For example, the Amended Complaint alleges that Defendant is registered to do business in Pennsylvania, maintains offices and employees in the state, and sells its products throughout Pennsylvania. (Doc. 14 at ¶¶ 5, 7, 12, 14). Further, Plaintiff alleges that Defendant has spent millions of dollars advertising Ford products in Pennsylvania and that these advertisements were directly targeted at Pennsylvania residents. (*Id.* at ¶¶ 25-26). This is more than sufficient to satisfy the purposeful contact prong.

The second prong focuses on the relatedness of the defendant's in-state contacts and the litigation. Although the Supreme Court has yet to articulate the scope of this requirement, lower courts have established a variety of tests. *Gentex Corp. v. Abbott*, 978 F. Supp. 2d 391, 399-400 (M.D. Pa. 2013). In the Third Circuit, the relatedness "analysis begins with but-for causation, but does not end there." *Colvin v. Van Wormer Resorts, Inc.*, 417 F. App'x 183, 187 (3d Cir. 2011). This Circuit has recognized that "[t]he animating

---

³ A slightly different test applies to claims of intentional torts. *See O'Connor*, 496 F.3d at 317 n.2 (citing *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). As no intentional torts are alleged here, the Court will apply the test as articulated in *O'Connor*.

6

principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable." *O'Connor*, 496 F.3d at 322. Consequently, "[b]ut-for causation cannot be the sole measure of relatedness because it is vastly overinclusive in its calculation of a defendant's reciprocal obligations." *Id*. Instead, "specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test." *Id*. at 323.

> The relatedness requirement's function is to maintain balance in this reciprocal exchange. In order to do so, it must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations. The causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable.

*Id*. (internal citation omitted).

Here, Plaintiff has alleged that had she "not seen [Defendant's] advertisements or commercials or other marketing materials touting the safety of Ford vehicles, and how much Ford cared/cares about safety, Plaintiff would not have been in the subject vehicle on the date of the accident." (Doc. 14 at ¶ 28). Defendant argues that its marketing activities are not related closely enough to Plaintiff's claim to satisfy the second personal jurisdiction prong. (Doc. 15 at 5). Taking Plaintiff's allegation as true for the purposes of resolving this Motion, the Court is satisfied that Plaintiff's claim arises out of or is related to Defendant's Pennsylvania contacts.

7

Initially, Defendant's advertisements are a but-for cause of Plaintiff's claim. According to the Amended Complaint, if Defendant did not advertise in Pennsylvania, Plaintiff would have not been driving the 2005 Ford Explorer. Further, the connection is "intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *O'Connor*, 496 F.3d at 323. Defendant directly and heavily advertised in Pennsylvania over a number of years and in a variety of mediums. (Doc. 14 at ¶¶ 26-27). The purpose of this in-state activity was to entice Pennsylvanians to buy and drive Ford brand vehicles, new or used. (*Id.* at ¶¶ 25, 27). Defendant did this, in part, by advertising the safety of its vehicles. (*Id.* at ¶ 27). In this way, Defendant benefited from the laws of Pennsylvania by using the state as a platform to increase the number of Pennsylvanians purchasing and driving Ford brand vehicles. This in-state activity, according to the Amended Complaint, directly enticed Plaintiff to buy a used Ford. (*Id.* at ¶ 28). Thus, Defendant's forum related contacts achieved exactly what Defendant was seeking to achieve: it influenced a Pennsylvania driver to choose to purchase and drive a Ford brand vehicle. Further, the claim arose because Plaintiff was allegedly injured while driving her Ford Explorer in the same state in which Defendant had influenced her decision to buy the vehicle. Accordingly, there is a direct and close relationship between Defendant seeking to entice Plaintiff and other Pennsylvanians to purchase and drive Ford brand vehicles, in part by touting the cars as safe, and Plaintiff's claim that a defect in her Ford Explorer caused

8

her injury while she was driving in the state where she was originally influenced by Defendant's advertisements to buy the vehicle.

*Rivera v. Bally's Park Place, Inc.*, 798 F. Supp. 2d 611 (E.D. Pa. 2011), and the line of similar cases, are not inapposite to the Court's conclusion. *Rivera* recognized that "the Eastern District of Pennsylvania has consistently found that advertising and promotional contacts with Pennsylvania do not give rise to claims of tortious conduct *in other states* and are therefore not sufficiently related to confer specific personal jurisdiction." *Id.* at 618 (emphasis added). Therefore, the *Rivera* court found that even if the defendant, a New Jersey casino, advertised in Pennsylvania, courts in Pennsylvania did not have specific personal jurisdiction over the casino with respect to a claim by a Pennsylvania resident that he was injured when he slipped and fell in the casino. *Id.* at 614, 618. *Rivera*, however, is distinguishable. First, because the injury here took place in Pennsylvania, the claim is more intimately associated with the Pennsylvania advertisements then if the injury occurred elsewhere. Second, some of the advertisements in this case concerned the safety of Ford products, (Doc. 14 at ¶ 27), which is also the subject of the litigation. In contrast, the advertisements in *Rivera* had nothing to do with the safety of the casino, and, as a result, were not as closely related to the claim as the advertisements here.

Defendant cites *Pitts v. Ford Motor Company*, 127 F. Supp. 3d 676 (S.D. Miss. 2015), in support of its position. In *Pitts*, a Texas couple was injured while driving their 2011 Ford Fusion in Mississippi. *Id.* at 679-80. The couple sued Ford Motor Company in

Mississippi, alleging that the car was defectively designed. *Id.* at 680. Ford moved to dismiss for lack of personal jurisdiction. *Id.* The *Pitts* court found that there was no nexus between Ford's contacts in Mississippi and the plaintiffs' claims. *Id.* at 685. *Pitts*, however, is dissimilar to the case at hand because, while the plaintiffs in *Pitts* alleged that Ford advertised in Mississippi, there was no allegation that the plaintiffs were driving in the car as a result of viewing the Mississippi advertisements.

Accordingly, the Court finds the relatedness prong is met and that therefore Defendant had minimum contacts with Pennsylvania. Alternatively, the Court finds that the minimum contacts requirement is met under a stream of commerce theory.[4] "Courts have

---

[4] In her brief, Plaintiff advocates for a stream of commerce theory based on language the brief attributes to *World-Wide Volkswagen*. Specifically, Plaintiff's brief states the following:

[A]s the United States Supreme Court said in *World-Wide Volkswagen*:

> When the contact stems from a product, sold or manufactured by the foreign defendant, which has caused harm in the forum state, the court has jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by **or used by** consumers in the forum state.

*World-Wide Volkswagen*, 444 U.S. at 298, 100 S.Ct. at 567, 62 L.Ed.2d 490 (1980) (emphasis added).
  . . . It is thus abundantly clear that in a product liability case, the exact product at issue need not be sold in Pennsylvania for a Court to have specific jurisdiction over the manufacturer if the manufacturer sells the product in Pennsylvania, as is the case here.

(Doc. 13 at 8-9). The quote Plaintiff attributes to *World-Wide Volkswagen* also appears in Plaintiff's sur reply brief. (Doc. 16 at 2). The quoted language that Plaintiff's attorneys repeatedly attribute to the Supreme Court, however, does not appear in *World-Wide Volkswagen* or, for that matter, in any other Supreme Court case. Instead, the quoted language appears in a Fifth Circuit case, *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987). At best, repeatedly misattributing a Fifth Circuit quote, which is not binding on this Court, to the United States Supreme Court, which of course is binding on this Court, is incredibly careless work on the part of Plaintiff's attorneys. At worst, it was a deliberate attempt to

10

relied on the stream-of-commerce theory to find a basis for personal jurisdiction over a non-resident defendant, often a manufacturer or distributor, which has injected its goods into the forum state indirectly via the so-called 'stream of commerce.'" *D'Jamoos*, 566 F.3d at 104-05. In *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987), the Supreme Court attempted to outline the contours of when it is appropriate for a court to exercise personal jurisdiction over a defendant under a stream of commerce theory. Unfortunately, a majority of the Court did not endorse a single approach. As a result, two different tests emerged, each joined by four justices.

> The first plurality opinion, authored by Justice O'Connor, found that
>
> [t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.
>
> *Asahi Metal Indus. Co.*, 480 U.S. at 112. The second plurality opinion, authored by Justice Brennan, endorsed a less demanding test, stating that

---

mislead this Court. Giving Plaintiff's attorneys the benefit of the doubt, the Court will assume that repeatedly misattributing the quote was due to inattentiveness, not deliberate misconduct. Nevertheless, Plaintiff's attorneys are on notice that the Court will not be inclined to extend such understanding in the future. Plaintiff's attorneys, therefore, should be extraordinarily careful to provide accurate citations in any and all future filings.

11

> [a] defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State.

*Id.* at 117 (Brennan, J., concurring).

"Since *Asahi*, the Third Circuit Court of Appeals has not formally adopted the approach described in either plurality opinion." *Sieg v. Sears Roebuck & Co.*, 855 F. Supp. 2d 320, 326 (M.D. Pa. 2012). "Rather, our circuit court of appeals applies both standards announced in the *Asahi* plurality opinions." *Id.* Thus, this Court will only find that it can exercise specific personal jurisdiction over Defendant under a stream of commerce theory if both *Asahi* tests are met.[5]

In *Pennzoil Products Company v. Colelli and Associates, Inc.*, 149 F.3d 197 (3d Cir. 1998), the Third Circuit had occasion to apply both *Asahi* tests. Pennzoil was an oil refinery in Pennsylvania who allegedly incurred damages to its facilities as a result of a solvent contained in the oil. *Id.* at 199. The solvent was created and sold by Colelli, an Ohio corporation with its principal place of business in Ohio. *Id.* Colelli sold the solvent to several Ohio oil producers to prevent their oil wells from accumulating wax during the

---

[5] A more recent Supreme Court decision, *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011), once again addressed the stream of commerce theory, but also failed to obtain the consensus of a majority of the justices. Consequently, the Third Circuit test remains unchanged in light of *J. McIntyre Machinery*. *See Sieg*, 855 F. Supp. 2d at 327.

12

process of extracting paraffin laced oil from the ground. *Id.* The oil producers then sold some of the extracted oil, which still contained the solvent, to Pennzoil in Pennsylvania. *Id.*

In determining whether the Western District of Pennsylvania had personal jurisdiction over Colelli, the Third Circuit applied the stream of commerce analysis. *Id.* at 206. Applying Justice O'Connor's approach first, the Third Circuit found that Colelli's placement of its solvent into the stream of commerce was accompanied by the additional conduct of "Colelli sen[ding] samples of Colelli solvents to laboratory personnel at Pennzoil's refinery to preclude future contamination problems." *Id.* This, according to the court, established both "an intent to 'design' a product which could be used to serve the Pennsylvania refinery market," and "'channels for providing regular advice to' Pennzoil's personnel in Pennsylvania." *Id.* at 206-07 (quoting *Asahi Metal Indus. Co.*, 480 U.S. at 112). Turning next to Justice Brennan's test, the court found that Colelli benefited from the sale of crude oil to Pennsylvania. *Id.* at 207. Thus, the court "conclude[d] that Colelli did have the minimum contacts needed to support the exercise of personal jurisdiction in Pennsylvania." *Id.*

Here, both *Asahi* tests are satisfied. With respect to the stream of commerce analysis advocated by Justice O'Connor, Plaintiff has pleaded that Defendant advertises its products in Pennsylvania, and that Defendant trains and certifies mechanics to repair its products in Pennsylvania. (Doc. 14 at ¶¶ 25-27; 44-45). Thus, Defendant's placement of the 2005 Ford Explorer into the stream of commerce was accompanied by "advertising in

13

the forum State, [and] establishing channels for providing regular advice to customers in the forum State." *Asahi Metal Indus. Co.*, 480 U.S. at 112. With respect to Justice Brennan's test, Plaintiff has pleaded that Defendant benefits from the sale of its products in Pennsylvania. (Doc. 14 at ¶ 9). Further, Plaintiff alleges that Defendant derives a benefit from Pennsylvanians using Ford brand vehicles in Pennsylvania, regardless of where they were originally purchased. For example, the Amended Complaint alleges that Ford earns money from the repair work done in Pennsylvania on Ford brand vehicles and that it trains and certifies technicians to work on Ford products in Pennsylvania. (*Id.* at ¶¶ 9, 39, 44-45).

Defendant argues that this Court does not have personal jurisdiction over it because the particular 2005 Ford Explorer at issue in this case was not purchased in Pennsylvania. (Doc. 10-6 at 10-13). This fact, however, is unimportant under *Pennzoil*. In *Pennzoil*, Colelli sold its product in Ohio and that product was eventually resold as part of another product to a company in Pennsylvania. Here, the particular vehicle was sold to a New York dealership, and eventually resold to a Pennsylvania resident. Although the claim must still relate to a defendant's contacts with the forum state for a court to exercise personal jurisdiction over that defendant under a stream of commerce theory, the defendant does not have to put the product directly into the forum state. *See D'Jamoos*, 566 F.3d at 105 (noting that "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled

14

into court there."). Here, Defendant's alleged actions showed its willingness to serve the Pennsylvania market and that Defendant derived benefits from Pennsylvanians owning new and used Ford brand vehicles. Further, as discussed above, it was Defendant's advertising in Pennsylvania that prompted Plaintiff to purchase a Ford brand vehicle.

Defendant argues that *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.* prevents this Court from exercising personal jurisdiction over Defendant under a stream of commerce theory. (Doc. 10-6 at 11-12). *D'Jamoos* involved several plaintiffs suing a Swiss airplane manufacturing company after one of the planes it sold crashed in Pennsylvania. 566 F.3d at 98. The Court held that it was "absolutely fatal to appellants' stream-of-commerce argument that the subject aircraft did not actually enter Pennsylvania through a 'stream of commerce' as that term is generally understood—i.e., 'the regular and anticipated flow of products from manufacture to distribution to retail sale.'" *Id.* at 105 (quoting *Asahi Metal Indus. Co.*, 480 U.S. at 117 (Brennan, J., concurring)). That Court, however, also recognized that "[i]f the claim in this case had arisen out of [the defendant's] efforts to serve, even indirectly, the Pennsylvania market, then it would make sense to evaluate [the defendant's] conduct under the stream-of-commerce theory." *Id.* at 106. In the case at hand, Plaintiff pleaded that the particular vehicle entered Pennsylvania because of Defendant's efforts to serve the Pennsylvania market through advertisements targeted at Pennsylvanians. Thus, *D'Jamoos* provides no support for Defendant's position, and the

Court finds that Defendant has the required minimum contacts with Pennsylvania in this case under a stream of commerce theory.

Turning to the final personal jurisdiction prong, "[h]aving determined that minimum contacts exist, [a court must] next consider whether the exercise of jurisdiction would otherwise comport with 'traditional notions of fair play and substantial justice.'" *O'Connor*, 496 F.3d at 324 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477). Factors to "consider when balancing jurisdictional reasonableness" include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate and international judicial system's interest in obtaining the most efficient resolution of controversies, and the procedural and substantive interests of other nations." *Id.* (internal citations, alterations, and quotation marks omitted).

Applying the above factors to the case at hand, the Court finds that the exercise of personal jurisdiction over the Defendant is reasonable in this case. Defendant has failed to show that it would be burdensome to litigate in Pennsylvania, the state has an interest in adjudicating the dispute because one of its residents was injured, adjudicating the matter in

Pennsylvania would allow Plaintiff to obtain convenient and effective relief, and there are no interstate or international concerns that make exercising jurisdiction unreasonable.

## V. CONCLUSION

For the reasons outlined above, this Court will deny Defendant's Motion to Dismiss. (Doc. 10). A separate Order follows.

Robert D. Mariani
United States District Judge